IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:21-cv-14309-AMC

AFFORDABLE AERIAL PHOTOGRAPHY,
INC.,

      Plaintiff,

v.

TONY TAYLOR a/k/a ANTHONY TAYLOR
a/k/a A-1 AUTO TRANSPORT, INC. a/k/a
AUTO TRANSPORT BROKER LEADS and
TAYLOR ONLINE MARKETING.COM, INC.

      Defendants.

_____

## MOTION FOR DEFAULT FINAL JUDGMENT

Plaintiff Affordable Aerial Photography, Inc. ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendants Tony Taylor a/k/a Anthony Taylor a/k/a A-1 Auto Transport, Inc. a/k/a Auto Transport Broker Leads ("Taylor") and Taylor Online Marketing.com, Inc. ("Taylor Online Marketing") (collectively, the "Defendants"), and states as follows:

## PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1.      On August 2, 2021, Plaintiff filed its Complaint in this action. The Complaint contains three causes of action: copyright infringement (against all Defendants); removal of copyright management information ("CMI") (against all Defendants); and vicarious copyright infringement (against Taylor).

2.      On August 4, 2021, the Court entered an Order Requiring Combined Responses [D.E. 5] which required Defendants to file a single combined response to the Complaint or separate

answers within the time allowed for the last-served Defendant to respond.

3.      Taylor was personally served with the Summons and Complaint in this lawsuit on August 14, 2021 [D.E. 6].

4.      Taylor Online Marketing was served with the Summons and Complaint in this lawsuit on August 30, 2021 [D.E. 7].

5.      On September 21, 2021 (following expiration of Defendants' response deadline), Plaintiff filed its Motion for Clerk's Default [D.E. 8].

6.      On September 22, 2021, the Clerk entered a Clerk's Default [D.E. 9] against both Taylor and Taylor Online Marketing.

## FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT[1]

### I.      Plaintiff's Business and History[2]

1.      Plaintiff was created as a Florida corporation in June 2005.  Plaintiff's sole shareholder is Robert Stevens.

2.      For the past sixteen (16) years, Mr. Stevens has been employed by Plaintiff as a high-end real estate photographer who specializes in aerial photography, stunning exterior and interior shots, as well as offering slide shows, virtual tours, and a full array of stock photography for luxury real estate industries.

3.      Mr. Stevens is a pioneer of aerial real estate photography and has been engaging in

---

[1]      "When a defendant defaults, it admits as true all well-pleaded factual allegations in the complaint." Enable Creative, LLC v. Charles Rutenberg Realty, LLC, No. 19-20789-CIV-MARTINEZ/MCALILEY, 2019 U.S. Dist. LEXIS 155224, at *2 (S.D. Fla. Sep. 10, 2019) (citing Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007)).

[2]      The facts set forth herein are based upon the well-pleaded allegations of the Complaint, the September 24, 2021 Declaration of Robert Stevens (the "Stevens Decl."), a true and correct copy of which is attached hereto as Exhibit "A," and the September 24, 2021 Declaration of Daniel DeSouza (the "DeSouza Decl."), a true and correct copy of which is attached hereto as Exhibit "B," and the September 24, 2021 Non-Military Affidavit pursuant to the Servicemembers Civil Relief Act, a true and correct copy of which is attached hereto as Exhibit "C."

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

creative and artistic means to capture such photographs long before today's proliferation of consumer drone technology came to market.

4.     Mr. Stevens travels throughout the State of Florida, nationally, and internationally to photograph high-end real estate on behalf of Plaintiff's clients.  He has been contracted by over 280 clients to take professional photographs of various real estate projects, including but not limited to the estates of numerous celebrities (such as Madonna, Don King, Greg Norman, Rod Stewart, Ivana Trump, James Patterson, Alexander Haig, Ann Downey, Frank McKinney, Chris Evert, and others).

5.     Plaintiff maintains a commercial website (www.robertstevens.com) which describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs taken by Mr. Stevens, and invites prospective customers to contact Plaintiff to arrange for a professional photo shoot.

6.     Plaintiff owns the photographs taken by Mr. Stevens and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, one-time license for use of any particular photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

7.     Generally, at the time Plaintiff creates its professional photography, it applies copyright management information to such photography to the bottom left or right corner thereof. Plaintiff does this for added protection/assurance to keep unauthorized persons from utilizing/displaying Plaintiff's work.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

## II.    The Work at Issue in this Lawsuit

8.      In 2009, Plaintiff created a professional, aerial photograph of the Jupiter Inlet in Jupiter, FL, titled "Jupiter Inlet 1 AAP 2009, Oct. 29, 2009" (the "Work"). Consistent with Plaintiff's general practices, the Work contains (in the bottom left corner) Plaintiff's copyright management information as follows: "© AAP 10-29, 2009 All Rights Reserved."  A copy of the Work is exhibited below:



9.      The Work was registered by Plaintiff with the Register of Copyrights on July 07, 2015 and was assigned Registration No. VA 1-967-719.[3]   A true and correct copy of the Certification of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

---

[3]      A true and correct copy of the Certification of Registration pertaining to the Work is attached to the Stevens Decl. as Exhibit "1" thereto.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

10.      Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

### III.      Defendants' Unlawful Activities

11.      Per his www.linkedin.com profile, Taylor represents himself as being in the business of "online marketing."

12.      Taylor owns and operates an auto transport business from his offices in Aptos, CA under several fictitious names that are not registered to do business in any state.  These businesses include both (a) A-1 Auto Transport, Inc. and (b) Auto Transport Broker Leads.

13.      A-1 Auto Transport, Inc. was formed as a Nevada corporation in in 1997 but had its certificate of formation permanently revoked in 2007.  A-1 Auto Transport, Inc. was registered in California as a foreign entity, but such registration was revoked in 2008.

14.      Although A-1 Auto Transport, Inc. is not registered to do business in any state, it has continued through the present date by falsely representing itself as an existing corporation located in California.

15.      A-1 Auto Transport, Inc. primarily markets its services through its website (https://www.a1autotransport.com) and various social media platforms (including Facebook, Twitter, etc.).

16.      According      to      the      A-1      Auto      Transport,      Inc.      website (https://www.a1autotransport.com/our-team/), Taylor (who is identified as the "President and Founder" of the company) "started A-1 Auto Transport when he purchased his first tow truck because he knew he could do it better. Over the last two decades, Tony has become an industry veteran and is an individual that many companies in this industry lean upon for his vast expertise. To this day, Tony is still active in the day-to-day operations of A-1, always stepping in to solve

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

new challenges as they arise."

17.     Taylor is the sole shareholder of Taylor Online Marketing.  Per its website (https://tolm.co/), Taylor Marketing provides online marketing services and lead generation, primarily in the auto transport industry.

18.     Per its website (https://autotransportbrokerleads.com/), Auto Transport Broker Leads is "the biggest car shipping lead providers for over 7 years."  The Auto Transport Broker Leads' website refers to "Tony Taylor" and "Joe Webster" as its founders.

19.     Taylor and Taylor Online Marketing own, operate, control, and publish all content to the A-1 Auto Transport, Inc. (https://www.a1autotransport.com), Taylor Online Marketing ((https://tolm.co/), and Auto Transport Broker Leads (https://autotransportbrokerleads.com/) websites.  All of these sites/businesses function as a single business entity (and all are operated from the same offices in Aptos, CA) that participates in two primary fields: (a) the transport of automobiles and (b) lead generation for other businesses engaged in the transport of automobiles.

20.     That Taylor Online Marketing is involved in the publishing/content of the www.a1autotransport.com website is evidenced by the copyright disclaimer on that site, stating: "Copyright © 1988 – 2021, Taylor Online Marketing.com, Inc – All Rights Reserved."

21.     Defendants regularly market their auto transportation services to consumers in Florida – indeed, they even have specific pages on their www.a1autotransport.com website dedicated exclusively to the shipment of vehicles to/from Florida.  These sub-pages include:

(a)    https://www.a1autotransport.com/florida-fl/;
(b)    https://www.a1autotransport.com/southwest-florida-auto-transport/;
(c)    https://www.a1autotransport.com/jupiter-motorcycle-shipping/;
(d)    https://www.a1autotransport.com/florida-moving/;
(e)    https://www.a1autotransport.com/shipping-a-motorcycle-from-ohio-to-florida-safely/;
(f)    https://www.a1autotransport.com/gathering-auto-transport-quotes-and-finding-the-right-transporter-in-florida/;
(g)    https://www.a1autotransport.com/purchasing-enclosed-auto-transport-in-florida/;
(h)    https://www.a1autotransport.com/find-the-right-professionals-for-boat-shipping-out-of-florida/;
(i)    https://www.a1autotransport.com/shipping-cars-overseas-from-florida/

22.    Defendants likewise maintain/publish *dozens* of sub-pages for individual counties (such as Miami-Dade and Broward) and individual cities/municipalities (such as Pembroke Pines, Tamarac, Vero Beach, Weston, Plantation, Sewall's Point, etc.).

23.    Each of these sub-pages invites consumers to fill out contact forms, request a shipping quote, calculate shipping, etc. for purposes of using Defendants' auto transport services to/from Florida.

24.    Defendants likewise maintain numerous agents in Florida that Defendants utilize for shipping of automobiles/marine vessels to/from Florida.  These agents include You're your Car Now, LLC (located in Boca Raton, FL), Budget Auto Shipping (located in Miami, FL), CD Auto Transport (located in Miami, FL), The All American Transport Company (located in Miami, FL), Exclusive Auto Logistics (located in Miami, FL), etc.

25.    Upon information and belief, Defendant ships hundreds (if not thousands) of automobiles/marine vessels to/from Florida on an annual basis.

26.    On a date after Plaintiff's above-referenced copyright registration of the Work, Defendants published the Work on the A-1 Auto Transport, Inc. website (https://www.a1autotransport.com/jupiter-motorcycle-shipping/) in connection with Defendants'

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

efforts to solicit consumers to utilize Defendants' motorcycle shipping services to/from Palm Beach County, FL:



27.     The foregoing website was accessible and was in fact accessed (on numerous occasions) from multiple persons in the State of Florida.

28.     In publishing the Work on the https://www.a1autotransport.com website, Defendants significantly cropped the Work so as to remove Plaintiff's copyright management information. The remaining details of the photograph, however, unequivocally show the two photographs to be the same.[4]

_____

[4]     A true and correct copy of screenshots of Defendants' website, displaying the copyrighted Work, is attached

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

29.     Defendants are not and have never been licensed to use or display the Work. Defendants never contacted Plaintiff to seek permission to use the Work in connection with the aforementioned use or for any other purpose – even though the Work that was copied clearly displayed Plaintiff's copyright management information and put Defendants on notice that the Work was not intended for public use.

30.     Defendants utilized the Work for commercial use – namely, in connection with their auto shipping and transportation services.

31.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff discovered Defendant's unauthorized use/display of the Work in July 2021.  Plaintiff is a small business operated by Mr. Stevens (who spends most of his days in the field on assignment taking photographs or editing such photographs prior to providing such to his clients).  Mr. Stevens has taken thousands (if not tens of thousands) of photographs that have been published online over the years, and he endeavors on an ongoing basis to utilize reverse image search tools (such as those available at www.google.com, www.bing.com, www.tineye.com) to search for a rotating sub-set of his photographs that may be illegally/improperly published by non-licensees.  Given the volume of photographs that Mr. Stevens has taken, he was reasonably unable to discover Defendants' improper use of the Work prior to July 2021 when their use appeared in one such reverse image search.

32.     On July 5, 2021 (following Plaintiff's discovery), Plaintiff notified Defendant in writing of such unauthorized use.

33.     Because Defendants did not respond to the aforementioned infringement notice,

---

to the Stevens Decl. as Exhibit "2" thereto.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Plaintiff (through counsel) attempted to contact Defendants telephonically prior to (and in a further attempt to avoid) the filing of this lawsuit.  On July 29, 2021, James D'Loughy, Esq. spoke with who is believed to be Taylor (at 831-778-4529) with respect to the aforementioned infringement notice.  Taylor expressed no remorse for his actions, instead challenging that "real men file lawsuits rather than call and harass" and "if a lawsuit is filed," Plaintiff will assuredly "lose the case."

## ARGUMENT

### I.      Applicable Legal Standards

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent.  Fed. R. Civ. P. 55(b)(2).  "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established."  Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment.  See U.S. v. Kahn, 164 F. App'x 855, 858 (11th Cir. 2006) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206) (5th Cir. 1975); Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007).  "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  If the admitted

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount.  See Nishimatsu, 515 F.2d at 1206.  An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Tara Productions, Inc. v. Hollywood Gadgets, Inc., 449 F. App'x 908, 911-12 (11th Cir. 2011).

## II.     Plaintiff is Entitled to Judgment on its Claims

### A.     *Copyright Infringement*

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a).  "Copyright infringement has  two elements: (1) ownership of a valid copyright, and (2) copying of protectable elements."  Home Design Servs., Inc. v. Turner Heritage Homes Inc., 825 F.3d 1314, 1320 (11th Cir. 2016).

### 1.     Plaintiff Owns a Valid Copyright for the Work

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  "Once a plaintiff produces a valid registration, the burden shifts to the defendant to establish that the work in which the copyright claimed is unprotectable."  Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010).  Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights on July 7, 2015 and was assigned Registration No. VA 1-967-719.  Defendants have not appeared in this action to challenge Plaintiff's

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

registration/ownership of a valid copyright.

### 2.     Defendants Copied the Work

The copying element of an infringement claim has two components.  Latimer v. Roaring

Toyz, Inc., 601 F.3d 1224, 1232 (11th Cir. 2010).  First, a plaintiff must demonstrate that the

defendants copied the plaintiff's work as a factual matter.  Id.  Second, the plaintiff must establish

"substantial similarity" between the allegedly infringing work and the elements of the copyrighted

work that are legally protected.  Id. at 1233.

Here, the screenshots of Defendants' website unequivocally show Defendants' copying of

the Work.  Defendants' default further constitutes an admission as to such copying.  There is no

factual or subjective issue of "substantial similarity" here as Defendants copied and published a

duplicate image of the Work (with CMI removed).  Thus, Defendants undisputedly copied

Plaintiff's copyrighted Work and a Final Default Judgment should be entered against Defendants

on Count I of the Complaint.

### B.     Removal of CMI

Under the Digital Millennium Copyright Act, no person shall "intentionally remove or alter

any copyright management information[.]"  17 U.S.C. § 1202(b)(1) (1999).  Copyright

management information includes information such as the title and name of the author of a work.

17 U.S.C. § 1201(c)(1)-(2); Roof & Rack Prods. v. GYB Investors, LLC, Case No. 13-80575-CV,

2014 U.S. Dist. LEXIS 92333, at *5 (S.D. Fla. July 8, 2014).  "An action for removal of copyright

management information requires the information to be removed from a plaintiff's product or

original work."  Faulkner Press, L.L.C. v. Class Notes, L.L.C., 756 F. Supp. 2d 1352, 1359 (N.D.

Fla. 2010).

Here, Plaintiff applied copyright management information to the Work consisting of the

words "© AAP 10-29, 2009 All Rights Reserved" to the bottom left corner of the Work.  The copy of the Work as displayed on Defendants' website unequivocally shows Plaintiff's CMI to be removed.  Further, by virtue of their default, Defendants are deemed to admit their willful removal of such CMI from the Work.[5]

### C.   *Taylor's Vicarious Liability*

To the extent Taylor did not directly infringe and violate Plaintiff's exclusive rights in violation of the Copyright Act, his default establishes his liability for vicarious copyright infringement in that he is the founder, President, and sole shareholder of A-1 Auto Transport, he has the right and ability to control the infringing acts of A-1 Auto Transport, he declined or failed to stop A-1 Auto Transport from committing the underlying infringement, and he derived a direct financial benefit from A-1 Auto Transport's infringement.  Given Taylor's admissions, he is equally responsible for the subject infringement on the basis of vicarious liability.  See, e.g. Broad. Music, Inc. v. Evie's Tavern Ellention, Inc., No. 8:11-cv-2056-T-17TBM, 2011 U.S. Dist. LEXIS 137720, at *5-8 (M.D. Fla. Nov. 30, 2011) ("Because Defendants, Evie's and Evanoff, benefited from the performances and admitted they owned, controlled, managed, and operated Evie's, they are vicariously liable for the infringement."); LaTele TV C.A. v. Telemundo Communs. Grp., LLC, No. 12-22539-CIV-ROSENBAUM, 2013 U.S. Dist. LEXIS 43488, at *32 (S.D. Fla. Mar. 26, 2013) ("[P]leading facts sufficient to pierce the corporate veil is not required in order to state a cause of action for vicarious copyright infringement.").

### III.   Defendants' Infringement was Willful

Willful infringement occurs when the Defendant acts "with 'actual knowledge

---

[5]      See, e.g. Complaint, at ¶¶ 35; 58.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" <u>Arista Records, Inc. v. Beker Enterprises, Inc.</u>, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (J. Cohn) (citing <u>Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.</u>, 658 F. Supp. 458, 464 (E.D.Pa.1987)). "Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default." <u>Id.</u> at 1313 (citations omitted). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." <u>Cable/Home Communication Corp. v. Network Productions</u>, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff took the extra step of notifying Defendants of their infringement pre-lawsuit. After multiple attempts to contact Defendants telephonically, their only response for their conduct was that 'real men file lawsuits.' Defendants' refusal to pay a reasonable licensing fee, childish antics upon being notified, and the fact that Defendants appear to publish hundreds of professional photography throughout their website all demonstrates that Defendants had actual knowledge, or at least acted with reckless disregard, of  the fact that their conduct infringed upon Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendants' default and the well-pled facts of the Complaint, which are admitted by Defendants' default, establish that Defendants' infringement of the Work was  willful and deliberate.

## IV.    **Plaintiff's Damages**

### A.    *Actual Damages*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "often measured by

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright." Lorentz v. Sunshine Health Prods., No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010).

The copyright owner may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed. Id. at 15. To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." Thornton v. J. Jargon Co., 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing Montgomery v. Noga, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

As evidence of license fees paid by other licensees for similar content and use, Plaintiff submits the Declaration of Robert Stevens ("Stevens Decl.") concurrently herewith.  For an ongoing commercial advertising use of photographs similar in quality and popularity to the Work, the Stevens Decl. establishes that Plaintiff would charge approximately $1,500 per year, per photograph.  Had Defendants requested Plaintiff to create and license the Works to reproduce and display the  copyrighted Work on their website, Plaintiff would have charged at least $1,500.00 annually for such license.

Mr. Stevens further declared that the licensing fees alone do not take into contemplation the  scarcity of the photograph, which also increases its value in this case.  A scarce image  typically demands a much higher fee than common image, and in this case, Mr. Stevens used a  unique capture technique that extends the range of visual information beyond what the eye can  normally see.  Because the Work was created using an air-balloon (a method of photography employed exclusively in Florida by Robert Stevens[6]), significant technical attributes were required to  make

---

[6]      Mr. Stevens is a pioneer in aerial balloon photography that he developed over many years through trial and

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

the Work including; inventing and hand-making a custom balloon gantry to house a Canon digital camera, retrofitting a remote controlled gyro-platform to a custom made gantry for the purpose of camera movement, installing an aerial video link to focus and direct the camera shot from the ground, monitoring the environment with regard to atmospheric conditions, cloud cover, wind speed, wind direction, and precipitation; extensive image location scouting to identify potential photo locations, angles, elevations, accessibility, and security issues; obtaining extensive authorizations to secure access to private property; and using advanced photo exposure control, both in-camera and via post-production software, to ensure a common brightness, contrast, clarity, color temperature, color saturation, color tonality, and image noise reduction among other factors.

Furthermore, the Work has lost significant value to its scarcity by the widespread and continuing dissemination resulting from Defendants' infringement.

Although Defendants failed to appear in this lawsuit or participate in discovery (and thus the extent of their use of the Work will never be fully known), it appears that the Work was uploaded to Defendants' website at least as early as September 29, 2018. By viewing the "Page Source"[7] of https://www.a1autotransport.com/jupiter-motorcycle-shipping/, at least two text comments are revealed with dates in September 2018:

> "I owe you guys big time! I got one huge deal from our client.","datePublished":"2018-09-29T17:58:50+00:00","url":"https:\/\/www.a1autotransport.com\/a-friend-recommended-me-to-go-to-a1-auto-transport\

> "Overall, a great company which I would definitely recommend to others!","datePublished":"2018-09-30T17:26:27+00:00","url":"https:\/\/www.a1autotransport.com\/a-great-company-which-i-would-definitely-recommend-to-others\

---

error.

[7]     See view-source:https://www.a1autotransport.com/jupiter-motorcycle-shipping/.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Plaintiff is otherwise unable to pinpoint the precise date on which the Work was uploaded to the Website given Defendants' wholesale failure/refusal to participate in this lawsuit (even though the Work is – ***to this date*** – still published on the Website at: https://a1auto.sfo2.digitaloceanspaces.com/media/jupiter.jpg).  Plaintiff has utilized various tools such as the Internet Wayback Machine (https://archive.org/web/) and sites from which image EXIF data (such as publish date) can be investigated, but the aforementioned code on the subject Website is the only information revealing a general publish date.

Given that Plaintiff would license the Work for $1,500.00 per year, this amounts to a loss of licensing fees equal to $4,500.00 (as caselaw generally limits Plaintiff to damages during the three-year lookback period).  Plaintiff does not pro-rate its licensing fees by the amount of months/days that any particular work is actually utilized.

Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) is instructive with respect to calculation of Plaintiff's actual damages:

> Corson believes that the scarcity of this work should also be considered in this Court's evaluation. Corson employed several techniques that she perfected over her career including: "professional strobe lighting to give the photos a polished, yet natural look. Most images were shot on a tripod with custom lighting setups that [Corson's] years of experience shooting homes and interiors has allowed [her] to execute with precision and speed. Selecting the proper lenses and aligning the camera properly is crucial to high-end architectural photography." ECF No. [12-2] at 3. Corson "then spent 2 working days processing the approximately 400 photographs using [her] proprietary adjustments to color, contract, levels, etc.; selected [her] favorites; [*6] made individual adjustments to those 92 files; then submitted them along with dozens of video clips to [her] editor." *Id.* The Court finds Corson's request for a scarcity multiplier of four is appropriate to reflect the fair market value of Corson's Work. *See Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc.*, No. 17-CV-81306-BB, 2018 U.S. Dist. LEXIS 227389, 2018 WL 6519104, at *2 (S.D. Fla.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

April 23, 2018) (J. Bloom) (applying a scarcity multiplier of six to an infringed work of photography); *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 394 (3d Cir. 2016) (affirming a jury verdict of $1.6 million where the sum included a multiplier of three to five times the benchmark because of the scarcity factor of a stem cell image). Therefore, Corson's actual damages are $19,200.00 (the licensing fee over two years times a scarcity multiplier of four).

Following Corson, Plaintiff's actual damages are calculated by multiplying the lost licensing amount ($4,500.00) by the relevant scarcity multiplier. Given the uniqueness of Mr. Stevens' capture methodology, Plaintiff submits that a scarcity multiplier of 5x is appropriate here. See, e.g. Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc., No. 17-CV-81306-BB, 2018 WL 6519104, at *3 (S.D. Fla. Apr. 23, 2018) (awarding $54,000 in statutory damages after applying scarcity multiplier of six to licensing fee and multiplier of three due to defendant's willfulness); Ermert v. Boca Dental Supply, LLC, No. 18-81666-CV-MIDDLEBROOKS, 2019 U.S. Dist. LEXIS 226572, at *6-7 (S.D. Fla. Mar. 29, 2019) ("I find that Plaintiff's request to apply a scarcity multiplier of five is appropriate to reflect the photograph's fair market value."), and Reiffer v. Legendary Journeys, Inc., No. 8:17-cv-2748-T-35AAS, 2019 U.S. Dist. LEXIS 62401, at *9 (M.D. Fla. Apr. 10, 2019) ("[A] scarcity multiplier of five accounts for revenue lost as a result of Legendary Journeys' unauthorized use of Mr. Reiffer's Sydney Opera House work."). This would result in actual damages of *$22,500.00*.

Defendants' inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendants' refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendants that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendants' profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or

her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).  Defendants solely control all information concerning their gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

In view of the foregoing, actual damages are insufficient due to Defendants' refusal to appear and participate in discovery, and Plaintiff thus elects to seek an award of statutory damages for Defendants' willful infringement of Plaintiff's copyrighted Work.

> **B.**     ***Statutory Damages are Appropriate for Defendants' Willful Copyright Infringement***

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendants' infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement.  Where (as here) willful infringement has occurred, courts in this Circuit will generally look to a plaintiff's actual damages and award 2x – 3x to properly account for statutory damages.  See, e.g. Corson, 2020 U.S. Dist. LEXIS 142932, at *5-7 (trebling the plaintiff's actual damages after applying a scarcity multiplier).

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendants' conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that their conduct is willful. Given the circumstances of the instant case, Plaintiff submits that an appropriate award of statutory damages of at least ***$67,500.00*** ($22,500.00 x 3) under 17 U.S.C. § 504(c)(2) is appropriate to accomplish full compensation to Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

for in actual damages and to deter future violations of copyright law.

     **C.**     ***Statutory Damages are Appropriate for Defendants' Willful Removal of Copyright Management Information***

     At any time before final judgment is entered, a party may elect to recover an award for statutory damages for each violation of 17 U.S.C. § 1202 in the sum of not less than $2,500 or more than $25,000. 17 U.S.C. § 1203(c)(3). Here, Plaintiff has produced evidence demonstrating the loss in value of its copyright and the potential of the Work becoming an orphan work due to removal of copyright management information.

     The removal of Plaintiff's copyright management information interfered with Plaintiff's actual and prospective relationships with clients who might otherwise compensate Plaintiff for the licensed use of its image. The removal of Plaintiff's copyright management information prevents it from granting any broadly exclusive license in the Works to a third party, and even if a third party does not require an exclusive license, few such clients would consider licensing Plaintiff's images for use in connection with services similar to those provided by the Defendants. The removal of Plaintiff's copyright management information eliminated its right and ability to control the use and transmission of the Works and made it vulnerable to becoming an orphan work.

     Defendants removed Plaintiff's copyright management information and posted the unauthorized Work on its website to market Defendants' services in Palm Beach County, Florida. Plaintiff requests that the Court award the maximum statutory damages amount of $25,000.00 for Defendant's violation. See, e.g. Stockwire Research Grp., Inc. v. Lebed, 577 F. Supp. 2d 1262, 1267 (S.D. Fla. 2008) (awarding $75,000 to the plaintiff for three § 1202 violations).

     **D.**     ***Full Costs and Reasonable Attorneys' Fees are Appropriate***

     Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing

party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendants' infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.   Additionally, 17 U.S.C. § 1203(b)(5) provides "the court … in its discretion may award reasonable attorney's fees to the prevailing party…," providing a second statute for an award of Plaintiff's full costs and attorney's fees.  Accordingly, Plaintiff requests the Court to award costs and attorney's fees in the amount of $5,031.90 consisting of costs in the amount of $764.40 and fees in the amount of $4,267.50. The amount and reasonableness of the costs and fees are established by the Declaration of James D'Loughy, submitted concurrently herewith.

## V.    Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against Defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint and admitted by Defendants' default, this Court has proper jurisdiction over this action.  Defendants' conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.  For example, the ability of Defendants to use Plaintiff's

Work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff is they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photographs or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendants; award Plaintiff $67,500.00 for Defendants' infringement of the Work, award Plaintiff $25,000.00 for Defendants' removal of Plaintiff's copyright management information, award Plaintiff its costs and attorneys' fees as set forth in the DeSouza Decl., award Plaintiff prejudgment interest, permanently enjoin Defendants from infringing activities; and for any other relief the Court deem just and proper.  A proposed order is filed herewith.

COPYCAT LEGAL PLLC

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Dated: September 24, 2021.                3111 N. University Drive
                                          Suite 301
                                          Coral Springs, FL 33065
                                          Telephone:  (877) 437-6228
                                          dan@copycatlegal.com

                                          By: /s/ Daniel DeSouza, Esq.
                                              Daniel DeSouza, Esq.
                                              Florida Bar No.:  19291

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record. I further certify that the foregoing document was served via US Mail on September 24, 2021 to: (a) Tony Taylor, 301 Peaceful Oaks Ln, Watsonville, CA 95076 and (b) Taylor Online Marketing, 9032 Soquel Drive, Aptos, CA 95003.

                                          /s/ Daniel DeSouza

                                          Daniel DeSouza

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228