IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:21-cv-14309-AMC

AFFORDABLE AERIAL PHOTOGRAPHY,
INC.,

     Plaintiff,

v.

TONY TAYLOR a/k/a ANTHONY TAYLOR
a/k/a A-1 AUTO TRANSPORT, INC. a/k/a
AUTO TRANSPORT BROKER LEADS and
TAYLOR ONLINE MARKETING.COM, INC.

     Defendants.

_____

## FINAL JUDGMENT AND PERMANENT INJUNCTION

**THIS CAUSE** is before the Court upon plaintiff Affordable Aerial Photography, Inc.'s

("Plaintiff") Motion for Default Final Judgment (the "Motion") [D.E. __].  The Court has

considered the Motion, notes the lack of response to the Motion by defendants Tony Taylor a/k/a

Anthony Taylor a/k/a A-1 Auto Transport, Inc. a/k/a Auto Transport Broker Leads ("Taylor") and

Taylor Online Marketing.com, Inc. ("Taylor Online Marketing") (collectively, the "Defendants"),

and is otherwise advised in the premises.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Court concludes that

Plaintiff has met its burden of showing that it is entitled to a final default judgment as to

Defendants.  Plaintiff has also met its burden of showing that it is entitled to permanent injunctive

relief against Defendants as specified herein.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

## I.   Findings of Fact[1]

1.     Plaintiff was created as a Florida corporation in June 2005.  Plaintiff's sole shareholder is Robert Stevens.  For the past sixteen (16) years, Mr. Stevens has been employed by Plaintiff as a high-end real estate photographer who specializes in aerial photography, stunning exterior and interior shots, as well as offering slide shows, virtual tours, and a full array of stock photography for luxury real estate industries.

2.     Mr. Stevens is a pioneer of aerial real estate photography and has been engaging in creative and artistic means to capture such photographs long before today's proliferation of consumer drone technology came to market.

3.     Mr. Stevens travels throughout the State of Florida, nationally, and internationally to photograph high-end real estate on behalf of Plaintiff's clients.  He has been contracted by over 280 clients to take professional photographs of various real estate projects, including but not limited to the estates of numerous celebrities (such as Madonna, Don King, Greg Norman, Rod Stewart, Ivana Trump, James Patterson, Alexander Haig, Ann Downey, Frank McKinney, Chris Evert, and others).

4.     Plaintiff maintains a commercial website (www.robertstevens.com) which describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs taken by Mr. Stevens, and invites prospective customers to contact Plaintiff to arrange for a professional photo shoot.

5.     Plaintiff owns the photographs taken by Mr. Stevens and serves as the licensing

---

[1]     A district court must exercise "independent judgment" in adopting a party's proposed findings.  Bright v. Westmoreland Cnty., 380 F.3d 729, 731-32 (3rd Cir. 2004). In this case, the Court has independently analyzed the evidence presented and has adopted only those findings which the Court has independently deemed appropriate under the circumstances.

agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, one-time license for use of any particular photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

6.      Generally, at the time Plaintiff creates its professional photography, it applies copyright management information to such photography to the bottom left or right corner thereof. Plaintiff does this for added protection/assurance to keep unauthorized persons from utilizing/displaying Plaintiff's work.

7.      In 2009, Plaintiff created a professional, aerial photograph of the Jupiter Inlet in Jupiter, FL, titled "Jupiter Inlet 1 AAP 2009, Oct. 29, 2009" (the "Work"). Consistent with Plaintiff's general practices, the Work contains (in the bottom left corner) Plaintiff's copyright management information as follows: "© AAP 10-29, 2009 All Rights Reserved." The Work was registered by Plaintiff with the Register of Copyrights on July 07, 2015 and was assigned Registration No. VA 1-967-719.

8.      Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

9.      Per his www.linkedin.com profile, Taylor represents himself as being in the business of "online marketing." Taylor owns and operates an auto transport business from his offices in Aptos, CA under several fictitious names that are not registered to do business in any state. These businesses include both (a) A-1 Auto Transport, Inc. and (b) Auto Transport Broker Leads.

10.      A-1 Auto Transport, Inc. was formed as a Nevada corporation in in 1997 but had

its certificate of formation permanently revoked in 2007.  A-1 Auto Transport, Inc. was registered

in California as a foreign entity, but such registration was revoked in 2008.  Although A-1 Auto

Transport, Inc. is not registered to do business in any state, it has continued through the present

date by falsely representing itself as an existing corporation located in California.

11.     A-1 Auto Transport, Inc. primarily markets its services through its website

(https://www.a1autotransport.com) and various social media platforms (including Facebook,

Twitter, etc.).       According    to    the    A-1   Auto   Transport,   Inc.   website

(https://www.a1autotransport.com/our-team/), Taylor (who is identified as the "President and

Founder" of the company) "started A-1 Auto Transport when he purchased his first tow truck

because he knew he could do it better. Over the last two decades, Tony has become an industry

veteran and is an individual that many companies in this industry lean upon for his vast expertise.

To this day, Tony is still active in the day-to-day operations of A-1, always stepping in to solve

new challenges as they arise."

12.      Taylor is the sole shareholder of Taylor Online Marketing.  Per its website

(https://tolm.co/), Taylor Marketing provides online marketing services and lead generation,

primarily in the auto transport industry.

13.     Per its website (https://autotransportbrokerleads.com/), Auto Transport Broker

Leads is "the biggest car shipping lead providers for over 7 years."  The Auto Transport Broker

Leads' website refers to "Tony Taylor" and "Joe Webster" as its founders.

14.     Taylor and Taylor Online Marketing own, operate, control, and publish all content

to the A-1 Auto Transport, Inc. (https://www.a1autotransport.com), Taylor Online Marketing

((https://tolm.co/), and Auto Transport Broker Leads (https://autotransportbrokerleads.com/)

websites.  All of these sites/businesses function as a single business entity (and all are operated

from the same offices in Aptos, CA) that participates in two primary fields: (a) the transport of automobiles and (b) lead generation for other businesses engaged in the transport of automobiles.

15.     That Taylor Online Marketing is involved in the publishing/content of the www.a1autotransport.com website is evidenced by the copyright disclaimer on that site, stating: "Copyright © 1988 – 2021, Taylor Online Marketing.com, Inc – All Rights Reserved."

16.     Defendants regularly market their auto transportation services to consumers in Florida – indeed, they even have specific pages on their www.a1autotransport.com website dedicated exclusively to the shipment of vehicles to/from Florida.  These sub-pages include:

    (a)    https://www.a1autotransport.com/florida-fl/;
    (b)    https://www.a1autotransport.com/southwest-florida-auto-transport/;
    (c)    https://www.a1autotransport.com/jupiter-motorcycle-shipping/;
    (d)    https://www.a1autotransport.com/florida-moving/;
    (e)    https://www.a1autotransport.com/shipping-a-motorcycle-from-ohio-to-florida-safely/;
    (f)    https://www.a1autotransport.com/gathering-auto-transport-quotes-and-finding-the-right-transporter-in-florida/;
    (g)    https://www.a1autotransport.com/purchasing-enclosed-auto-transport-in-florida/;
    (h)    https://www.a1autotransport.com/find-the-right-professionals-for-boat-shipping-out-of-florida/;
    (i)    https://www.a1autotransport.com/shipping-cars-overseas-from-florida/

17.     Defendants likewise maintain/publish *dozens* of sub-pages for individual counties (such as Miami-Dade and Broward) and individual cities/municipalities (such as Pembroke Pines, Tamarac, Vero Beach, Weston, Plantation, Sewall's Point, etc.).

18.     Each of these sub-pages invites consumers to fill out contact forms, request a shipping quote, calculate shipping, etc. for purposes of using Defendants' auto transport services to/from Florida.

19.     Defendants likewise maintain numerous agents in Florida that Defendants utilize

for shipping of automobiles/marine vessels to/from Florida. These agents include You're your Car Now, LLC (located in Boca Raton, FL), Budget Auto Shipping (located in Miami, FL), CD Auto Transport (located in Miami, FL), The All American Transport Company (located in Miami, FL), Exclusive Auto Logistics (located in Miami, FL), etc.

20. On a date after Plaintiff's above-referenced copyright registration of the Work, Defendants published the Work on the A-1 Auto Transport, Inc. website (https://www.a1autotransport.com/jupiter-motorcycle-shipping/) in connection with Defendants' efforts to solicit consumers to utilize Defendants' motorcycle shipping services to/from Palm Beach County, FL.

21. In publishing the Work on the https://www.a1autotransport.com website, Defendants significantly cropped the Work so as to remove Plaintiff's copyright management information. The remaining details of the photograph, however, unequivocally show the two photographs to be the same.

22. Defendants are not and have never been licensed to use or display the Work. Defendants never contacted Plaintiff to seek permission to use the Work in connection with the aforementioned use or for any other purpose – even though the Work that was copied clearly displayed Plaintiff's copyright management information and put Defendants on notice that the Work was not intended for public use.

23. Defendants utilized the Work for commercial use – namely, in connection with their auto shipping and transportation services.

24. Plaintiff discovered Defendant's unauthorized use/display of the Work in July 2021, notified Defendants of their infringement, and attempted to negotiate a reasonable license fee for Defendants' past use. When Plaintiff's counsel made contact with Taylor to discuss the

6

matter, Taylor expressed no remorse for his actions, instead challenging that "real men file lawsuits rather than call and harass" and "if a lawsuit is filed," Plaintiff will assuredly "lose the case."

25.     Although Defendants did not participate in this case, Plaintiff has adduced (through using various investigative tools) that Defendants published the Work to their website at least as early as September 29/30, 2018 (through review of certain comments visible when expecting the 'Page Source' of the subject website).  Plaintiff, however, is unable to pinpoint the exact date the Work was published thereto other than to aver (and for which Defendants are deemed to admit by virtue of their default) that the Work was published to the website after Plaintiff's aforementioned registration of the Work with the Register of Copyrights.

## II.     Conclusions of Law

### A.     Applicable Legal Standards

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment.  See U.S. v. Kahn, 164 F. App'x 855, 858 (11th Cir. 2006) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206) (5th Cir. 1975); Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007).  "While a complaint . . .

does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. See Nishimatsu, 515 F.2d at 1206. An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Tara Productions, Inc. v. Hollywood Gadgets, Inc., 449 F. App'x 908, 911-12 (11th Cir. 2011).

### B.   Copyright Infringement

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement has two elements: (1) ownership of a valid copyright, and (2) copying of protectable elements." Home Design Servs., Inc. v. Turner Heritage Homes Inc., 825 F.3d 1314, 1320 (11th Cir. 2016).

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Once a plaintiff produces a valid registration, the burden shifts to the defendant to establish that the work in which the copyright claimed is unprotectable." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010). Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights on July 7, 2015 and was assigned Registration

8

No. VA 1-967-719. Defendants have not appeared in this action to challenge Plaintiff's registration/ownership of a valid copyright, and therefore Plaintiff has satisfied the first element.

The copying element of an infringement claim has two components. <u>Latimer v. Roaring Toyz, Inc.</u>, 601 F.3d 1224, 1232 (11th Cir. 2010). First, a plaintiff must demonstrate that the defendants copied the plaintiff's work as a factual matter. <u>Id.</u> Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected. <u>Id.</u> at 1233.

Here, the screenshots of Defendants' website unequivocally show Defendants' copying of the Work. Defendants' default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendants copied and published a duplicate image of the Work (with CMI removed). Thus, Defendants undisputedly copied Plaintiff's copyrighted Work and Plaintiff has met its burden on each element for the subject claim.

### C. *Removal of Copyright Management Information (CMI)*

Under the Digital Millennium Copyright Act, no person shall "intentionally remove or alter any copyright management information[.]" 17 U.S.C. § 1202(b)(1) (1999). Copyright management information includes information such as the title and name of the author of a work. 17 U.S.C. § 1201(c)(1)-(2); <u>Roof & Rack Prods. v. GYB Investors, LLC</u>, Case No. 13-80575-CV, 2014 U.S. Dist. LEXIS 92333, at *5 (S.D. Fla. July 8, 2014). "An action for removal of copyright management information requires the information to be removed from a plaintiff's product or original work." <u>Faulkner Press, L.L.C. v. Class Notes, L.L.C.</u>, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010).

Here, Plaintiff applied copyright management information to the Work consisting of the words "© AAP 10-29, 2009 All Rights Reserved" to the bottom left corner of the Work. The copy

of the Work as displayed on Defendants' website unequivocally shows Plaintiff's CMI to be removed.  Further, by virtue of their default, Defendants are deemed to admit their willful removal of such CMI from the Work.[2]

       **D.**     ***Taylor's Vicarious Liability***

By virtue of their default, Defendants are deemed to admit that A-1 Auto Transport, Inc. is a fictitious name/non-existent entity utilized by Taylor.  Even if A-1 Auto Transport, Inc. was an existing corporate entity, however, Taylor's default establishes his liability for vicarious infringement in that he is the founder, President, and sole shareholder of A-1 Auto Transport, he has the right and ability to control the infringing acts of A-1 Auto Transport, he declined or failed to stop A-1 Auto Transport from committing the underlying infringement, and he derived a direct financial benefit from A-1 Auto Transport's infringement.  Given Taylor's admissions, he is equally responsible for the subject infringement on the basis of vicarious liability.  See, e.g. Broad. Music, Inc. v. Evie's Tavern Ellention, Inc., No. 8:11-cv-2056-T-17TBM, 2011 U.S. Dist. LEXIS 137720, at *5-8 (M.D. Fla. Nov. 30, 2011) ("Because Defendants, Evie's and Evanoff, benefited from the performances and admitted they owned, controlled, managed, and operated Evie's, they are vicariously liable for the infringement."); LaTele TV C.A. v. Telemundo Communs. Grp., LLC, No. 12-22539-CIV-ROSENBAUM, 2013 U.S. Dist. LEXIS 43488, at *32 (S.D. Fla. Mar. 26, 2013) ("[P]leading facts sufficient to pierce the corporate veil is not required in order to state a cause of action for vicarious copyright infringement.").

       **E.**     ***Willfulness***

Willful infringement occurs when the Defendant acts "with 'actual knowledge

---

[2]     See, e.g. Complaint, at ¶¶ 35; 58.

or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" <u>Arista Records, Inc. v. Beker Enterprises, Inc.</u>, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (J. Cohn) (citing <u>Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.</u>, 658 F. Supp. 458, 464 (E.D.Pa.1987)). "Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default." <u>Id.</u> at 1313 (citations omitted). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." <u>Cable/Home Communication Corp. v. Network Productions</u>, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff took the extra step of notifying Defendants of their infringement pre-lawsuit. After multiple attempts to contact Defendants telephonically, their only response for their conduct was that 'real men file lawsuits.' Defendants' refusal to pay a reasonable licensing fee, childish antics upon being notified, and the fact that Defendants appear to publish hundreds of professional photography throughout their website all demonstrates that Defendants had actual knowledge, or at least acted with reckless disregard, of   the fact that their conduct infringed upon Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendants' default and the well-pled facts of the Complaint, which are admitted by Defendants' default, establish that Defendants' infringement of the Work was   willful and deliberate.

### F.    *Plaintiff's Damages*

#### 1.    **Actual Damages**

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "often measured by

the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright." <u>Lorentz v. Sunshine Health Prods.</u>, No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010).

The copyright owner may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed. <u>Id.</u> at 15. To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." <u>Thornton v. J. Jargon Co.</u>, 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

As evidence of license fees paid by other licensees for similar content and use, Plaintiff submitted Mr. Stevens declaration concurrently with the Motion.  For an ongoing commercial advertising use of photographs similar in quality and  popularity to the Work, the Stevens Decl. establishes that Plaintiff would charge approximately $1,500 per year, per photograph.  Had Defendants requested Plaintiff to create and license the Works to reproduce and display the copyrighted Work on their website, Plaintiff would have charged at least $1,500.00 annually for such license.

Mr. Stevens further declared that the licensing fees alone do not take into contemplation the  scarcity of the photograph, which also increases its value in this case.  A scarce image  typically demands a much higher fee than common image, and in this case, Mr. Stevens used a  unique capture technique that extends the range of visual information beyond what the eye can  normally see.  Because the Work was created using an air-balloon (a method of photography employed exclusively in Florida by Robert Stevens[3]), significant technical attributes were required to  make

---

[3]        Mr. Stevens is a pioneer in aerial balloon photography that he developed over many years through trial and

the Work including; inventing and hand-making a custom balloon gantry to house a Canon digital camera, retrofitting a remote controlled gyro-platform to a custom made gantry for the purpose of camera movement, installing an aerial video link to focus and direct the camera shot from the ground, monitoring the environment with regard to atmospheric conditions,  cloud cover, wind speed, wind direction, and precipitation; extensive image location scouting to   identify potential photo locations, angles, elevations, accessibility, and security issues; obtaining   extensive authorizations to secure access to private property; and using advanced photo exposure   control, both in-camera and via post-production software, to ensure a common brightness,  contrast, clarity, color temperature, color saturation, color tonality, and image noise reduction among other factors.

Furthermore, the Work has lost significant value to its scarcity by the widespread  and continuing dissemination resulting from Defendants' infringement.

Although Defendants failed to appear in this lawsuit or participate in discovery (and thus the extent of their use of the Work will never be fully known), it appears that the Work was uploaded to Defendants' website at least as early as September 29, 2018.  Plaintiff is otherwise unable to pinpoint the precise date on which the Work was uploaded to the Website given Defendants' wholesale failure/refusal to participate in this lawsuit (even though the Work is – *__to this date__* – still published on the Website at: https://a1auto.sfo2.digitaloceanspaces.com/media/jupiter.jpg). Plaintiff   has   utilized   various   tools   such   as   the   Internet   Wayback   Machine (https://archive.org/web/) and sites from which image EXIF data (such as publish date) can be investigated, but the aforementioned code on the subject Website is the only information revealing a general publish date.

---

error.

Given that Plaintiff would license the Work for $1,500.00 per year, this amounts to a loss of licensing fees equal to $4,500.00 (as caselaw generally limits Plaintiff to damages during the three-year lookback period).  Plaintiff does not pro-rate its licensing fees by the amount of months/days that any particular work is actually utilized.

Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) is instructive with respect to calculation of Plaintiff's actual damages:

> Corson believes that the scarcity of this work should also be considered in this Court's evaluation. Corson employed several techniques that she perfected over her career including: "professional strobe lighting to give the photos a polished, yet natural look. Most images were shot on a tripod with custom lighting setups that [Corson's] years of experience shooting homes and interiors has allowed [her] to execute with precision and speed. Selecting the proper lenses and aligning the camera properly is crucial to high-end architectural photography." ECF No. [12-2] at 3. Corson "then spent 2 working days processing the approximately 400 photographs using [her] proprietary adjustments to color, contract, levels, etc.; selected [her] favorites; [*6]  made individual adjustments to those 92 files; then submitted them along with dozens of video clips to [her] editor." *Id.* The Court finds Corson's request for a scarcity multiplier of four is appropriate to reflect the fair market value of Corson's Work. *See Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc.*, No. 17-CV-81306-BB, 2018 U.S. Dist. LEXIS 227389, 2018 WL 6519104, at *2 (S.D. Fla. April 23, 2018) (J. Bloom) (applying a scarcity multiplier of six to an infringed work of photography); *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 394 (3d Cir. 2016) (affirming a jury verdict of $1.6 million where the sum included a multiplier of three to five times the benchmark because of the scarcity factor of a stem cell image). Therefore, Corson's actual damages are $19,200.00 (the licensing fee over two years times a scarcity multiplier of four).

Following Corson, Plaintiff's actual damages are calculated by multiplying the lost licensing amount ($4,500.00) by the relevant scarcity multiplier.  Given the uniqueness of Mr. Stevens' capture methodology, the Court concludes that a scarcity multiplier of 5x is appropriate here.  See,

14

e.g. Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc., No. 17-CV-81306-BB, 2018 WL 6519104, at \*3 (S.D. Fla. Apr. 23, 2018) (awarding $54,000 in statutory damages after applying scarcity multiplier of six to licensing fee and multiplier of three due to defendant's willfulness); Ermert v. Boca Dental Supply, LLC, No. 18-81666-CV-MIDDLEBROOKS, 2019 U.S. Dist. LEXIS 226572, at \*6-7 (S.D. Fla. Mar. 29, 2019) ("I find that Plaintiff's request to apply a scarcity multiplier of five is appropriate to reflect the photograph's fair market value."), and Reiffer v. Legendary Journeys, Inc., No. 8:17-cv-2748-T-35AAS, 2019 U.S. Dist. LEXIS 62401, at \*9 (M.D. Fla. Apr. 10, 2019) ("[A] scarcity multiplier of five accounts for revenue lost as a result of Legendary Journeys' unauthorized use of Mr. Reiffer's Sydney Opera House work.").  This would result in actual damages of ***$22,500.00***.

Defendants' inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendants' refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendants that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses.  To establish Defendants' profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).  Defendants solely control all information concerning their gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

### 2.      Statutory Damages for Copyright Infringement

Due to Defendants' failure to participate in this lawsuit and the difficulty of determining the full extent of actual damages, Plaintiff has elected to recover statutory damages for Defendants'

infringement pursuant to 17 U.S.C. § 504(c).  In cases of non-willful infringement, 17 U.S.C. § 504(c)(1) provides for an award of statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just."  In cases (such as this) where the infringement is deemed to be willful, 17 U.S.C. § 504(c)(2) provides that "the Court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00."  In awarding enhanced damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp., 902 F.2d at 851 (internal quotation omitted). Specifically, when an infringing party does not provide expenses saved and profits reaped by the infringing party, the court will instead only look to the actual damages and willful conduct and award an amount of two to three times actual damages to fully compensate Plaintiff and adequately deter future conduct like that of the Defendants.  See, e.g. Corson, 2020 U.S. Dist. LEXIS 142932, at *5-7 (trebling the plaintiff's actual damages after applying a scarcity multiplier).

In light of Defendants' willful conduct, choice not to defend this lawsuit, and apparent lack of remorse/verbal insults when confronted with their conduct, the Court concludes that *$67,500.00* is an appropriate award of statutory damages under 17 U.S.C. § 504(c)(2) to fairly compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct, and to deter future violations of copyright law. This amount is calculated by trebling Plaintiff's actual damages ($22,500.00).

### 3.     Statutory Damages for Removal of Copyright Management Information

At any time before final judgment is entered, a party may elect to recover an award for statutory damages for each violation of 17 U.S.C. § 1202 in the sum of not less than $2,500 or more than $25,000. 17 U.S.C. § 1203(c)(3).  Here, Plaintiff has produced evidence demonstrating

the loss in value of its copyright and the potential of the Work becoming an orphan work due to removal of copyright management information.  Given Defendants' willful conduct and lack of remorse for such conduct, the Court finds that an award of *$25,000.00* is appropriate for removal of Plaintiff's copyright management information.

### G.    Costs and Attorneys' Fees

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendants' infringement and their failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.

17 U.S.C. § 1203(b)(5) likewise provides "the court … in its discretion may award reasonable attorney's fees to the prevailing party…," providing a second statute for an award of Plaintiff's full costs and attorney's fees.

The Court finds that an award of attorneys' fees and costs is appropriate here.  Defendants' willful conduct, failure to engage Plaintiff in an attempt to pay a reasonable licensing fee, and failure to participate in this lawsuit resulted in unnecessary fees and costs being incurred.  The Court has reviewed the declaration of Plaintiff's counsel filed together with the Motion and finds such declaration to support the amount of fees and costs being sought.

The Court finds that the costs sought by the Motion ($764.70) are taxable against Defendants.  These costs consist of the filing fee for this lawsuit and the service of process costs (which were increased due to Defendants' attempts to evade service and failure to maintain a registered agent to accept service).

Having concluded Plaintiff is entitled to attorneys' fees, the Court must now determine the reasonableness of Plaintiff's requested fee amount. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "This number is called the lodestar." Ela v. Destefano, 869 F.3d 1198, 1203 (11th Cir. 2017). "[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." Id. But "[u]ltimately, the computation of a fee award is necessarily an exercise of judgment, because there is no precise rule or formula for making these determinations." Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001).

The Court has performed the lodestar analysis and finds that Plaintiff's counsel reasonably expended 9.7 hours (with .2 of those hours being expended by a paralegal in Plaintiff's counsel's office) in connection with pursuing this matter. The Court further finds that $450.00 is a reasonable hourly rate for Plaintiff's counsel (Daniel DeSouza) and that $125.00 is a reasonable hourly rate for the paralegal in this action given the complexity of the matter, the results obtained, and the experience of Plaintiffs' counsel which the Court found to be substantial. Mr. DeSouza is a 2004 graduate of the George Washington University Law School who is admitted to both the Florida Bar and the New York Bar. He previously worked at Milbank, Tweed, Hadley & McCloy LLP (from 2004 – 2010) and Becker & Poliakoff, PA (from 2010 – 2014) before forming DeSouza Law, PA in 2014 and jointly forming CopyCat Legal PLLC in 2019. Given the above, the Court has calculated the lodestar amount to be $4,267.50.

### H.    *Permanent Injunction*

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final

injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502.  Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

Here, Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.  For example, the ability of Defendants to use Plaintiff's Work for their own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's work if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, this Court will enter a permanent injunction against Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

### III.     Conclusion

Judgment is hereby entered in favor of Plaintiff, Affordable Aerial Photography, Inc., and against defendants Tony Taylor a/k/a Anthony Taylor a/k/a A-1 Auto Transport, Inc. a/k/a Auto Transport Broker Leads and Taylor Online Marketing.com, Inc., ***jointly and severally***, as follows:

1.      Plaintiff, Affordable Aerial Photography, Inc., shall recover from defendants Tony Taylor a/k/a Anthony Taylor a/k/a A-1 Auto Transport, Inc. a/k/a Auto Transport Broker Leads and Taylor Online Marketing.com, Inc., the principal sum of ***$113,913.63***, for which let execution issue.  The foregoing sum consists of $67,500.00 (statutory damages for copyright infringement), $25,000.00 (statutory damages for removal of copyright management information), $764.70 (costs), $4,267.50 (attorneys' fees), and $16,381.43 (prejudgment interest as provided by the DeSouza Decl.).

2.      Pursuant to Fed. R. Civ. P. 69(a) and Fla. R. Civ. P. 1.560, the judgment debtors, Tony Taylor a/k/a Anthony Taylor a/k/a A-1 Auto Transport, Inc. a/k/a Auto Transport Broker Leads and Taylor Online Marketing.com, Inc., shall complete, under oath, a Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, Daniel DeSouza Esq., CopyCat Legal PLLC, 3111 N. University Drive, Suite 301, Coral Springs, FL 33065, within 45 days from the date of this Final Judgment, unless the Final Judgment is satisfied or post-judgment is stayed. Failure to complete the fact information sheet shall be just cause for further sanctions. See, e.g., Biggross, Inc. v. Matthews, No. 8:02-CV-1216-T-MAP, 2007 WL 2827566, at *1 (M.D. Fla. Sept. 27, 2007) (awarding sanctions for a defendant's failure to fill out a fact information sheet).

3.      Defendants Tony Taylor a/k/a Anthony Taylor a/k/a A-1 Auto Transport, Inc. a/k/a Auto Transport Broker Leads and Taylor Online Marketing.com, Inc., their employees, agents,

officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, are permanently enjoined from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this __ day of _____, 2021.

_____
AILEEN M. CANNON
United States District Judge